## COMMONWEALTH *vs.* ROBERT SMITH.

No. 02-P-46.

Middlesex. February 12, 2003. - June 26, 2003.

Present: PORADA, KASS, & COHEN, JJ.

*Armed Assault with Intent to Murder. Practice, Criminal,* Assistance of counsel, Grand jury proceedings, Plea. *Acquired Immunodeficiency Syndrome.*

A criminal defendant's attorney did not provide ineffective assistance in advising the defendant to stipulate to the fact that he was infected with the human immunodeficiency virus, where G. L. c. 111, § 70F, the statute that requires consent before health care providers or facilities may perform certain tests, did not define the State crime laboratory or a law enforcement agency as a health care provider or health care facility, and where, at the time the order was issued, there was no case law that had addressed the breadth or scope of this statute; moreover, even assuming that defense counsel's advice fell below that of an ordinary fallible lawyer, the defendant failed to demonstrate that he was prejudiced by the advice, in that the evidence before the grand jury was sufficient to return an indictment of assault with intent to murder. [383-386]

INDICTMENT found and returned in the Superior Court Department on June 17, 1999.

A plea of guilty was accepted by *Peter M. Lauriat,* J., and a motion for a new trial, filed on September 19, 2001, was heard by him.

*William A. Korman* for the defendant.

*Marguerite T. Grant,* Assistant District Attorney (*Elizabeth A. Dunigan,* Assistant District Attorney, with her) for the Commonwealth.

*Bennett H. Klein,* for Gay & Lesbian Advocates & Defenders, amicus curiae, submitted a brief.

PORADA, J. The defendant appeals from the denial of his motion to withdraw his plea of guilty to an indictment charging him with an assault with intent to commit murder. His sole

contention on appeal is that his trial counsel was ineffective in advising him to enter into a stipulation that he is infected with the human immunodeficiency virus (HIV), associated with acquired immune deficiency syndrome (AIDS), as part of a presentment to a grand jury that resulted in the indictment in this case. The defendant argues that this information could not have been obtained without his informed consent based on G. L. c. 111, § 70F, and that, without this information, the grand jury would not have returned the indictment of assault with intent to murder to which he pleaded guilty.[1] We affirm the denial of the motion.[2]

To establish that defense counsel was ineffective, the defendant must show that "there has been serious incompetency, inefficiency, or inattention of counsel — behavior . . . falling measurably below that which might be expected from an ordinary fallible lawyer — and, if" so, that those shortcomings "deprived the defendant of an otherwise available, substantial ground of defen[s]e." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). We are of the opinion that the defendant has failed to meet his burden.

During the course of the grand jury proceeding, the grand jurors heard evidence that the defendant, in his struggle with correction officers, shouted out, "I'm HIV positive. . . . I'm gonna kill you all. . . . You're all gonna die. . . . I have AIDS." The prosecutor then asked the grand jurors if they wished to obtain a court order requiring the defendant to submit to a blood test to determine if the defendant was HIV positive. The grand jurors responded that they did want that information, and a Superior Court judge, finding that the sample would assist the grand jurors in their investigation of certain assaults, ordered the defendant to submit to a blood test to be performed at the State crime laboratory. Defense counsel moved to vacate the court order on the grounds that testing the defendant's blood would not produce relevant evidence and that there were less intrusive methods to obtain such information. Defense counsel

---

[1]The defendant does not dispute that his guilty plea was made voluntarily, knowingly, and intelligently.

[2]We acknowledge the amicus brief filed by Gay & Lesbian Advocates & Defenders.

referred to G. L. c. 111, § 70F, in his memorandum of law in support of his motion, in which he argued that the statute evinced an intent by the Legislature to keep certain test results confidential, but he did not argue that the statute constituted a bar to obtaining this information without the consent of the defendant. At the hearing on the motion to vacate the order, the defendant agreed to stipulate that he was HIV positive. Another Superior Court judge then vacated the order, and the defendant and his counsel signed a stipulation in which the defendant admitted that he was HIV positive. This stipulation was then presented to the grand jury.

The defendant argues that, if his trial counsel had done adequate research, he would have known that the Commonwealth could not have obtained a test of his blood for HIV without his consent. Without deciding whether the defendant's contention is correct, we nevertheless are of the opinion that counsel's advice was within the range of competence demanded by attorneys in criminal cases.

General Laws c. 111, § 70F, as inserted by St. 1986, c. 241, in pertinent part provides:

> "No health care facility, as defined in section seventy E, and no physician or health care provider shall (1) test any person for the presence of the HTLV-III antibody or antigen without first obtaining his written informed consent; (2) disclose the results of such test to any person other than the subject thereof without first obtaining the subject's written informed consent; or (3) identify the subject of such tests to any person without first obtaining the subject's written informed consent."

The statute applies to a health care provider and health care facility as defined in G. L. c. 111, § 1 and § 70E, respectively. Neither the State crime laboratory nor a law enforcement agency is defined as a health care provider or health care facility in the statute. Cf. *Attorney Gen.* v. *Bodimetric Profiles*, 404 Mass. 152, 154-156 & n.4 (1989) (noting but declining to reach the defendant insurance laboratory's argument that, because it was only an employer of health care providers, it was not a "health care provider" within the meaning of § 70F). Further, at the time the order was issued, there was no case law that had ad-

dressed the breadth or scope of this statute, let alone the particular issue raised in this case, and it was well established that, at the request of a grand jury, a court could order a suspect to furnish a sample of his blood for testing if the test would probably produce evidence relevant to the determination of the suspect's guilt. See *In the Matter of a Grand Jury Investigation*, 427 Mass. 221, 226, cert. denied sub nom. *A.R.* v. *Massachusetts*, 525 U.S. 873 (1998). See also *Commonwealth* v. *Downey*, 407 Mass. 472, 475 (1990); *Matter of Lavigne*, 418 Mass. 831, 835 (1994). Given the language of the statute, the existing case law, and the defendant's admitted disclosure to one of his victims that he had AIDS, we infer that defense counsel justifiably concluded that the Commonwealth would have been able to have the defendant's blood tested for the HIV virus because the evidence would have been relevant to the investigation before the grand jury. Counsel then simply advised the defendant to stipulate to the fact that he was HIV positive to avoid unnecessary medical tests.

The defendant, however, argues that this advice demonstrated serious incompetency, inefficiency, or inattention of counsel. See *Commonwealth* v. *Saferian*, 366 Mass. at 96. To support his argument, the defendant relies on a decision of a single justice of the Supreme Judicial Court in which the single justice ruled that the statute provides an absolute bar to obtaining HIV test results without the subject's consent. Commonwealth *vs.* Ortiz, S.J.C. No. SJ-2001-0055, slip op. (Feb. 15, 2001). Even if we were to assume that the decision had full precedential value, it is inapplicable to the facts of this case. There, police officers sought disclosure of the defendant's HIV status in order to take appropriate medical steps for their own health. Here, the evidence sought was relevant to prove the crime charged. Additionally, the order of disclosure in the Ortiz matter sought test results that had likely been produced by a health care provider defined in § 70F, whereas in this case, the defendant's blood was to be tested at the State crime laboratory. Further, the decision in the Ortiz matter was issued about twenty months after the stipulation in this case was presented to the grand jury. To the extent that the Ortiz matter in some way relates to defense counsel's competency in this case, the defendant has made no showing that the decision there had been foreshadowed, such

that counsel should have anticipated the reasoning therein. See *Commonwealth* v. *Chase*, 433 Mass. 293, 297-298 (2001). In measuring effectiveness of counsel, we do not require clairvoyance. *Commonwealth* v. *Amirault*, 424 Mass. 618, 639 (1997).

To bolster his claim, the defendant also points to a number of bills filed in the Legislature permitting a judge to order a defendant to submit to a test for HIV in those instances where a police officer has been exposed to a defendant's blood or bodily fluids. See 1994 Senate Doc. No. 817; 1995 Senate Doc. No. 531; 1997 Senate Doc. No. 474; 1998 Senate Doc. No. 496; 1999 Senate Doc. No. 452. The mere filing of those bills, however, adds little sustenance to the defendant's argument, as the reason for the filing and failure to enact those bills is the subject of sheer speculation and would not necessarily have alerted an ordinary fallible lawyer that G. L. c. 111, § 70F, might pose a bar to the Commonwealth's procurement of a blood sample for testing for HIV from a suspect where that evidence was relevant to a criminal investigation.

Even if we were to assume that defense counsel's advice to the defendant to stipulate to his HIV status fell below that of an ordinary fallible lawyer, which we do not, for the defendant's claim to succeed, he was required to show prejudice. The defendant argues that, but for counsel's advice, he would not have been indicted on two counts of assault with intent to murder because, absent the stipulation, the evidence before the grand jury was insufficient to sustain the charges. We disagree.

We limit our discussion to the one charge of assault with intent to commit murder on correction officer Michael Nionakis because the other indictment of assault with intent to commit murder was nol prossed. The standard for testing the sufficiency of evidence before the grand jury is whether "the grand jury heard . . . 'reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense.' " *Commonwealth* v. *McCarthy*, 385 Mass. 160, 163 (1982), quoting from *Commonwealth* v. *Stevens*, 362 Mass. 24, 26 (1972). Without the stipulation attesting to the defendant's HIV status, there was sufficient evidence to sustain the indictment. The elements of

assault with intent to commit murder are assault, the specific intent to kill, and malice. *Commonwealth* v. *Murray*, 51 Mass. App. Ct. 57, 61 (2001). In the grand jury proceeding, Nionakis testified that when two other correction officers and he were attempting to move the defendant to a medical cell in the jail, the defendant became abusive and combative. During the struggle, the defendant yelled that he had "HIV" and that "he was going to hurt one of [them]." The defendant then bit Nionakis's forearm and said, "I'm HIV positive. I hope I kill you and your fucking kids." Another correction officer testified that, during the incident, the defendant said, "I'm gonna kill you all. . . . You're all gonna die. . . . I have AIDS." The grand jury also heard testimony from a police officer that Dr. Barbara Werner of the department of health had told him that it would be possible for a person infected with the HIV virus to transmit the disease by biting someone, if they broke the skin and their gums contained blood, as in the case of poor gums. Based on the defendant's admission that he had HIV; the absence of any evidence of justification, excuse, or mitigation; and the defendant's statement that he intended to kill Nionakis by infecting him with HIV, coupled with his biting of Nionakis's arm, the jury had sufficient evidence to return an indictment of assault with intent to murder. Cf. *Commonwealth* v. *Casanova*, 429 Mass. 293, 299 (1999). Because an indictment on this charge was inevitable, the defendant cannot claim that he was prejudiced by counsel's advice to stipulate to his HIV status.

> *Order denying motion to withdraw guilty plea affirmed.*